UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS MICHAEL LAMB, | No. 1:21-cv-00373-GSA |
| Plaintiff, | |
| v. | **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| KILOLO KIJAKAZI, acting Commissioner of Social Security, | |
| Defendant. | **(Doc. 20, 23)** |

I.      **Introduction**

Plaintiff Nicholas Michael Lamb ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1] Docs. 20, 23, 24. After reviewing the record, the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

II.     **Factual and Procedural Background[2]**

On February 24, 2017 and June 21, 2018 Plaintiff applied for disability insurance benefits and supplemental security income, respectively. In both applications he alleged a disability onset date of April 12, 1999. AR 19, 171. The Commissioner denied the application initially on June 28, 2017 and on reconsideration on September 10, 2018. AR 77, 94. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on January 28, 2020. AR 39–65. On March 25, 2020 the ALJ issued a decision denying Plaintiff's application. AR 16–38. The

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 8 and 10.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

Appeals Council denied review on July 28, 2020.  AR 5–10.  On March 10, 2021 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.   The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of April 12, 1999.  AR 22.  At step two the ALJ found that Plaintiff had the following severe impairments: attention deficit hyperactive disorder (ADHD), cognitive disorder, autism spectrum disorder, Asperger's, oppositional defiant disorder, disruptive behavioral disorder, depressive disorder, and bipolar disorder.  AR 22.  The ALJ also determined at step two that Plaintiff had two non-severe impairments (asthma and migraine headaches), and one non-medically determinable impairment (chest pain).  AR 23.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 23–25.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: "the claimant can perform only simple, routine, and repetitive tasks with no interaction with the public and occasional interaction with coworkers and supervisors. The claimant would do best if allowed to complete simple, routine, and repetitive tasks

independently. The claimant can use simple judgment, ask for help if needed, and sustain routines under these conditions and maintain attendance." AR 25–31.

At step four the ALJ concluded that Plaintiff had no past relevant work. AR 31. At step five in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: hand packager, laundry worker, and janitor. AR 32. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since his alleged disability onset date of April 12, 1999. AR 32.

## V.    Issues Presented

Plaintiff asserts two claims of error: 1) the ALJ erred by failing to evaluate Plaintiff's disability for the entire relevant period by failing to apply the childhood disability standards for the period prior to Plaintiff's 18th birthday; 2) the ALJ erred by failing to weigh the opinion of Plaintiff's treating and examining psychiatrist, Dr. Brar, in accordance with the regulations, and failing to set forth specific, legitimate reasons for doing so.

### A.    The Childhood Disability Standards

The childhood disability standards are set forth at 20 C.F.R. § 416.924 and govern the determination of whether individuals under the age of 18 are disabled. They are distinct from the set of regulations which govern the determination of whether adults are disabled, set forth at 20 C.F.R. § 416.920. *See* 20 C.F.R. § 416.924(f).

A minor may apply for Title II Social Security Disability (SSDI) benefits on his own earnings record, in which case the rules set forth at section 416.924 govern whether the individual is disabled.

An individual may also apply for SSDI "child's benefits" based on the earnings record of an insured person:

(a) General. You are entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if—

(1) You are the insured person's child, based upon a relationship described in §§ 404.355 through 404.359;

(2) You are dependent on the insured, as defined in §§ 404.360 through 404.365;

(3) You apply;

(4) You are unmarried; and

(5) You are under age 18; you are 18 years old or older and have a disability that began before you became 22 years old; or you are 18 years or older and qualify for benefits as a full-time student as described in § 404.367.

20 C.F.R. § 404.350(a)

Somewhat confusingly, a disabled adult over the age of 18 who became disabled before the age of 22 may still be entitled to "child's benefits" based on the earnings record of an insured person.  The reference to "child's benefits" in section 404.350(a) is somewhat of a misnomer insofar as it can apply to dependent adults between the ages of 18 and 22.  Because such an individual is still an adult, the childhood disability regulations at section 416.924 do not apply.  *See* 20 C.F.R. § 416.924(f).

A minor may also be eligible for Supplemental Security Income if that individual meets the income requirements and regulatory definition of disability.  Because SSI benefits apply only prospectively from the filing date, the individual's age at the date of filing (regardless of the disability onset date) will determine which set of rules govern the determination of whether the individual is disabled.  *See* 20 C.F.R. § 416.305(a), 416.330(a); 20 C.F.R. § 416.924.

Here, Plaintiff filed for SSDI benefits on February 24, 2017 (at age 17) based on the earnings record of his mother, and applied for SSI benefits on June 21, 2018 (at age 19).  Because Plaintiff neither filed for SSDI benefits based on his own earnings record as a minor, nor filed for SSI benefits before the age of 18, the regulations governing childhood disability under 20 C.F.R. § 416.924 did not come into play.

The fact that Plaintiff was asserting his own disability in his SSDI application filed at age

5

17[3] is of no moment because, simply put, Plaintiff's disability status before the age of 18 is irrelevant for the purposes of a claim for "child's benefits" under 20 C.F.R. § 404.350(a) based on the earnings record of his mother.  *See* Disability Benefits: How You Qualify, Benefits For Children With Disabilities, *available at* https://www.ssa.gov/benefits/disability/qualify.html (last accessed August 28, 2022) ("A child under age 18 may have a disability, *but we don't need to consider the child's disability when deciding if he or she qualifies for benefits as a dependent.*") (emphasis added).  An individual is eligible regardless of his own disability status if he is under 18, unmarried, and the dependent child of an insured individual who qualifies for benefits based on old age, disability, or death.  20 C.F.R. § 404.350(a).

Somewhat confusingly, the ALJ purported to adjudicate Plaintiff's disability status from his April 12, 1999 date of birth onward (the alleged onset date).  AR 32.  This was unnecessary and illogical in that the ALJ could not, by definition, adjudicate the disability status of a child with reference to the regulations applicable to adults (the only regulations she referenced).  This was a mistake, but not a harmful one in the respect Plaintiff contends, namely the failure to apply the childhood disability regulations.  Again, those regulations did not apply.  Had he filed for SSDI benefits based on his own earnings record the childhood disability regulations would have applied. Similarly, had he filed his SSI application before turning 18, the childhood disability regulations would have applied.

Finally, Plaintiff suggests that the regulations governing childhood disability, 20 C.F.R. § 416.924, would have applied for at least a period of approximately two months from the date he applied for SSDI on February 24, 2017 at age 17, until he turned 18 two months later on April 12, 2017.  Reply. at 2, Doc. 24 ("Under the regulations, Plaintiff's February 2017 application is deemed

---

[3] Plaintiff emphasizes this fact, while Defendant unsuccessfully attempts to refute it by citing a 2013 application in which Plaintiff stated he was *not* disabled.  Resp. at 7 (citing AR 167).

to also be a claim for SSI benefits, and his claim should have been evaluated under the proper standard. 20 C.F.R. § 416.351.").

Plaintiff appears to be suggesting that the SSI application dated June 21, 2018 should have the same effective date as his SSDI application dated February 24, 2017.  Without elaboration, Plaintiff cites to a regulation section titled "Deemed filing date in a case of misinformation," which describes circumstances when an SSI application may be effective earlier than the date filed if the delay in filing was due to the applicant's reliance on misinformation from the agency's representatives.  Plaintiff does not explain why that regulation applies here.

Therefore, there was no need for the ALJ to apply section 416.924 governing childhood disability.

### B.   Dr. Brar's Opinion

#### 1.   Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other

evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence.  20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons.  *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization.  20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Licensed Marriage and Family Therapists (L.M.F.Ts) are not "acceptable medical sources." *See* 20 C.F.R. § 404.1513 (2013).[4]  Rather, they are considered to be "other" medical sources.  *Id*;

---

[4] The Social Security Administration has adopted new rules applicable to claims filed on or after March 27, 2017,

20 C.F.R. § 404.1513(d)(1) (2013).   Unlike the opinions of treating physicians, the opinions of "other" treating sources are not entitled to special weight.   20 C.F.R. § 404.1527(c)(2) and (f)(1). An ALJ may reject the opinions of "other" sources by giving "reasons germane to each witness for doing so."   *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), superseded by regulation on other grounds; *Turner v. Comm'r of Soc. Sec. Admin*., 613 F.3d 1217, 1224 (9th Cir. 2010). Inconsistency with medical evidence is a germane reason.   *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

### 2.   **Analysis**

Plaintiff's psychiatrist, Dr. Brar, completed a mental RFC questionnaire on January 27, 2020.   AR 1041–43.   Dr. Brar rated 20 mental abilities on a scale ranging from category I (no performance preclusion) to Category IV (precludes performance 15% or more of the workday) across 4 areas of mental functioning including: understanding and memory, sustained memory and concentration, social interaction, and adaptation.   Dr. Brar checked the box corresponding to Category IV for 9 out of 20 abilities.   AR 1041–42.   Dr. Brar opined Plaintiff would be absent from work 5 or more days per month and would be unable to complete an 8-hour work day on 5 or more days per month due to his mental impairments.   AR 1043.

The ALJ found Dr. Brar's opinion partially persuasive insofar as Dr. Brar opined that Plaintiff was not precluded from understanding, remembering, and carrying out very short and simple instructions; remembering locations and work like procedures; using simple judgment to make decisions; interacting appropriately with the general public; and, asking questions.   AR 30. The ALJ found the opinion unpersuasive insofar as it identified work preclusive limitations in other areas.   *Id.*   In that respect the ALJ found the opinion inconsistent with treatment notes which the

---

which expand the category of acceptable medical providers to include some additional providers not previously included. 20 C.F.R. §§ 404.1502(a)(8) (2017); 416.902(a)(8) (2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

ALJ characterized as "grossly unremarkable with the claimant exhibiting a euthymic affect, an appropriate attitude, a goal directed thought process, fair impulse control, fair insight, good concentration, good attention, a calm, cooperative, and respectful demeanor, and no suicidal ideations, homicidal ideations, hallucinations, or other perceptual disturbances." *Id.* (citing Ex. 2F/4, 2F/9, 7F/5, 7F/11, 7F/20, 7F/32, 18F/12, 18F/36, and 18F/52).

Plaintiff contends the ALJ's characterization was a "very selective representation" of the record as a whole, and that the ALJ cherry picked normal mental status examination findings while ignoring abnormal findings including, "poor judgment, poor insight, poor impulse control, angry affect, poor mood, and guarded attitude. Br. at 9-11 (citing AR 666, 668, 671, 673, 675, 677, 680, 743, 746, 749, 752, 755, 758, 764, 767, 770, 773, 776, 779, 782, 786, 983, 985, 987, 990, 993, 996, 999, 1002, 1005, 1008, 1011, 1014, 1017, 1020, 1023, 1026, 1030, 1033).

The ALJ did acknowledge that Plaintiff's "judgment is often described as poor." AR 25. She simply did so at step three when evaluating Plaintiff's mental functioning under "paragraph B" criteria, specifically in the section regarding adaptation. AR 25. That discussion was not reiterated when discussing Dr. Brar's opinion specifically, but it can be considered, nonetheless. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion . . . if those inferences are to be drawn.).

Although the ALJ did not acknowledge the findings Plaintiff emphasizes concerning "guarded" attitude, she did note that L.M.F.T. Reither found Plaintiff's attitude "anti-social," which the ALJ found was at odds with Dr. Brar's examination findings noting appropriate attitude. AR 29 (citing Ex. 15F, 18F/5, 18F/9, 18F/12, 18F/21, 18F/33, and 18F/48). The ALJ further acknowledged as a general proposition that "the medical evidence documents a history of aggression and irritability . . .", though Plaintiff testified he had never acted out violently in public.

10

AR 28.

Plaintiff is correct that the ALJ did not specifically acknowledge the abnormal findings he cites concerning insight, impulse control, affect, and mood.  Nevertheless, a review of all pertinent reasoning in the ALJ's opinion reveals that the ALJ did not cherry pick the record.  The ALJ demonstrated awareness of a representative number and variety of normal and abnormal mental examination findings alike, and reached a reasoned conclusion as to what they showed on balance.

Plaintiff does not dispute the accuracy of the ALJ's citations concerning the numerous normal findings on mental status examination.  Even if the examinations as a whole were not necessarily "grossly normal" as the ALJ described, at a minimum the record contained mixed findings on mental status examination in the respects Plaintiff discusses.  Where the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

Plaintiff further contends the ALJ "ignored the fact that Dr. Brar's opinion is consistent with the Plaintiff's function reports (Ar. 333-41, 398-406), testimony (Ar. 31-54), third-party function reports (Ar. 346-53, 389-96), and a medical source opinion from Plaintiff's therapist, Richard E. Reither, M.A., L.M.F.T (Ar. 945-47)."

The ALJ made specific findings regarding Plaintiff's function reports, testimony, and third-party reports, including: 1) the ability to play video games requires navigation of complexities, situational and spatial awareness which support no more than moderate limitations in concentration, persistence and pace; 2) the RFC for simple and routine tasks is supported by Plaintiff's activities including: cooking, shopping, managing a checking account, using a banking app on his phone, riding his bike to the bank, wood working, ceramics, gardening and growing various fruits and

vegetables, watching YouTube videos for gardening instruction, and performing chores as needed; 3) he can withstand some workplace social interaction given his testimony that he talks to friends when upset, talks on the phone most days, and attends church most Sundays.   AR 24-30.

Plaintiff's assertion that his testimony, function report, and third party report support Dr. Brar's opinion is generally belied by the examples the ALJ cited, is non-responsive to the ALJ's discussion, and falls short of his burden on appeal to identify harmful error.

As to L.M.F.T. Reither's opinion (Plaintiff's treating counselor since 2002), the ALJ addressed the same at length, noting: 1) despite their long treating history he is not an acceptable medical source;[5] 2) despite the long treatment history he included only a few pages of treatment notes which were outdated and contained no objective findings; 3) his statement the Plaintiff has an anti-social attitude is inconsistent with objective findings noting appropriate attitude (citing e.g. 18F/5, 18F/9, 18F/12, 18F/21, 18F/33, and 18F/48); and, 4) his opinion that the claimant cannot follow directions is also at odds with his activities of daily living that include gardening, and researching online and watching a "how to video" on YouTube when needed in order to solve problems that may arise.   AR 29.   Similarly, as set forth above regarding Dr. Brar, Plaintiff's assertion that L.M.F.T. Reither's opinion supports Dr. Brar's opinion is non-responsive to the ALJ's independent reasoning for rejecting both opinions.   The opinions may have supported one another, but neither one was supported by the broader record.

Plaintiff further contends that "the ALJ failed to acknowledge that Dr. Brar has been examining and treating Plaintiff for his severe mental impairments on a monthly basis for more than 14 years."   The ALJ noted that Dr. Brar is a psychiatrist who rendered Plaintiff's various mental health diagnoses while in fact citing many examination findings by Dr. Brar.   AR 26.   The implication here is that he was Plaintiff's examining and treating psychiatrist.   Although the ALJ

---

[5] Which, as explained above, is correct and requires only germane reasoning for rejection of such an opinion.

did not explicitly state as much, nor acknowledge the 14-year length of the treating relationship or the frequency of examination, the regulations only require the ALJ to consider specialization and treating relationship, not to articulate how those factors were considered.  20 C.F.R. § 404.1527(c).

Finally, Plaintiff takes issue with the ALJ's reliance on the non-examining opinions which were not in person examinations, which opinions are generally entitled to little weight, and whose opinions only constitute substantial evidence when consistent with independent clinical findings, and who did not have access to the complete medical file.[6]

Notwithstanding the weight the ALJ purported to give to the non-examining opinions, of greater importance is the ALJ's affirmative reasons supporting the RFC.  Those reasons included normal mental status examination findings in most areas, mixed findings in other areas, and subjective statements from Plaintiff describing extensive activities of daily living.  That reasoning was a sufficient basis to reject Dr. Brar's opinion.  The record amply supported the conclusion that Plaintiff can perform simple and routine tasks with minimal social interaction and no public contact.

## VI.   Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Nicholas Michael Lamb.

IT IS SO ORDERED.

---

[6] As to the record allegedly being inadequately developed at the point of the non-examining physician's review, Plaintiff does not contend that the ALJ had a duty to fully develop the record with additional examinations or opinions, that the ALJ otherwise erred in relying on her own lay understanding of the records, or that the purported inadequacy of the record at the initial or reconsideration levels otherwise warrants remand for that purpose.  The argument here rather is part of Plaintiff's contention that the ALJ should not have relied on the non-examining opinions.

Dated:   **August 29, 2022**              **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE